ISNARD *v.* TORRES AND F. MARQUEZ.

*Marquez* endorsed a note for *Torres* for $150. The blanks being carelessly filled up, the note was afterwards interpolated to create an obligation for $1,150. The alteration was so skilfully executed that a cautious person might have been deceived. Plaintiff purchased the note in good faith. *Held:* That the endorser was bound for the note as altered. For it was a want of proper caution on the part of *Marquez* to endorse a note containing such a blank, and the rule is where one of two parties, neither of whom has acted dishonestly, must suffer, he shall suffer who by his own act occasioned the confidence and conseqent injury of the other.

APPEAL from the Second District Court of New Orleans, *Lea,* J. *Dufour,* for plaintiff. *Roselius,* for defendant and appellant.

SLIDELL, C. J. *Marquez* is sued upon a promissory note made in the usual form by *Torres,* to the order of and endorsed by *Marquez.* On its face the note purports to be for $1,150. The defence is that at the time *Marquez* endorsed the note, it was for $150, but that after he endorsed it, and without his knowledge or consent, it was altered to $1,150.

The note which has been brought up in original for our inspection, presents the following form and in the same handwriting:

On the first line is written—

Nouvelle-Orléans le 29 avril 1854.

On the second line is written—

Dans soixante jours de cette date Je paierai

On the third line is written—

à l'ordre de Monsr. Fco. Marquez, Onze

On the fourth line is written—

cent cinquante piastres, valeur Reçu ce jour.

On the fifth line is written—

$1,150                                             FDO. TORRES, JR.

There was testimony of experienced persons to the effect that there was nothing in the appearance of this note, as it now stands, to excite the suspicion of a prudent discounter, and in this opinion our personal inspection suggests an entire concurrence. There is the testimony of two witnesses who saw the note, or what they think was the same note, in the hands of *Marquez* to whom the maker sent it to obtain his accommodation endorsement, to the effect that it was then a note for $150; and this testimony, coupled with the fact that *Torres* has absconded, after negotiating other notes similarly falsified, goes very far to justify a reasonable conviction that *Marquez* has been made the victim of a gross fraud by *Torres,* to whom he returned the note after endorsing it. There is also testimony of experienced persons to the effect that if at the time of endorsement, the word onze and the additional figure before the figures 150 were not there, the note would have exhibited blanks which at least with regard to the written part were unusual, and calculated to attract attention, and would have rendered the note unsaleable in the market. And in this opinion also, upon inspection of the note we fully concur.

*Torres* being a fugitive insolvent, a loss must fall either upon *Isnard,* a holder for value, whose bona fides is unimpeached, or upon *Marquez.* Upon which of them shall it fall, is the question we have to determine.

ISNARD
v.
TORRES.

We think the solution of the question is readily found by a recurrence to the familiar principle, that where one of two parties, neither of whom has acted dishonestly, must suffer, he shall suffer who by his own act occasioned the confidence, and consequent injury of the others. There was a want of proper caution on the part of *Marquez* in endorsing a note containing such a blank. This want of proper caution on his part enabled *Torres* to commit a fraud by filling up the blank, so as to increase the amount in a manner entirely free from suspicion; and surely the equity of *Marquez*, whose case is certainly a very hard one, is inferior to that of *Isnard*, who has parted with his money on the faith of a state of things which the imprudence of *Marquez* enabled *Torres* to create.

This conclusion which we base upon a principle of natural equity, is satisfactorily supported by precedents with respect to this class of instruments, which the law regards with great favor as to those who act upon them in good faith.

Thus in *Young* v. *Grot*, 4 Bing., 253, we find a case not distinguishable upon principle from the present. *Young* had left with his wife blank checks on his banker, signed by him and to be used in his absence. She desiring to pay a sum of fifty pounds, two shilling and three pence, delivered one to his clerk to be filled up with that amount. He did fill it up with that sum, and showed it to her; but when so filled up, it presented the following appearance: The third line contained the words fifty pounds and the figures 2s. 3d., but the word fifty commenced in the middle of that third line, and with a small letter, so that ample space in that line was left for the insertion of other words before the word fifty; and their was at the bottom of the draft the figures 50. 2. 3., but the figure 5 was at a sufficient distance from the letter £ to allow another figure to be inserted between it and the letter £. The Clerk then, after showing the draft to Mrs. *Young* in this state, without authority altered it to three hundred and fifty pounds two shillings and three pence, by introducing in the blank spaces new words and figures; and this alteration was made in such a manner that no person, using due and ordinary diligence, could have discovered the fact of fraudulent interpolation. The banker paid the check so altered, and debited the amount in account. The drawer objected to the debit, but unsuccessfully. The decision was put on the ground that the banker in parting with the money had been misled by want of proper caution on the part of his customer.

The authority of Pothier which was appositely cited in that case, is upon principle equally applicable here. Si c'étoit par la faute du tireur que le banquier eût été induit en erreur, le tireur n'ayant pas eu le soin d'écrire sa lettre de manière à prévenir les falsifications; *puta*, s'il avoit écrit en chiffres la somme tirée par la lettre, et qu'on eût ajouté zéro; le tireur seroit en ce cas tenu d'indemniser le banquier de ce qu'il a souffert de la falsification de la lettre, à laquelle le tireur par sa faute a donné lieu.

See also, *Pagen* v. *Wylie*, which was the case of an endorser sued upon an altered bill, as stated in Ross' Commercial Law, p. 140.

Judgment affirmed with costs.