LEHMAN, DURR & Co. *v.* CENTRAL RAILROAD & BANKING Co.

*(Circuit Court, M. D. Alabama. 1882.)*

COMMON CARRIER—ALTERED BILL OF LADING—LIABILITY.

> The fact that the shipper was allowed to fill the bill of lading in his own handwriting, and leave a blank which afforded opportunity for increasing the statement of the number of bales shipped, will not render the common carrier liable for loss occasioned by the forgery of the shipper in raising the bill of lading.

Action for Damages. Demurrer to complaint.

WOODS, Justice. The gravamen of the complaint is that the defend- ant so negligently performed its duty in respect to the making out of the bills of lading that it was in the power of any one to commit the fraud alleged. The question is, does the fact that the shipper was allowed to fill the bill of lading in his own handwriting, and leave a blank which afforded opportunity for increasing the statement of the number of bales shipped, render the common carrier liable for any loss occasioned by the forgery of the shipper in raising the bill of lading? We think that upon the weight of reason and authority the question must be answered in the negative.

The cases most nearly resembling this are those in which a prom- issory note has been executed complete upon its face, in which there are blanks left by the maker, in which, after the delivery of the note, additional words, without the assent of the maker in the draw-

ing, had been inserted, increasing the amount of the note, or the rate of interest, etc. Such notes have been held to be void in the hands of a *bona fide* holder.

The rule established by the authorities seems to be that where a note complete on its face and not entrusted by the maker to any one for the purpose of being filled up or added to, but which is afterwards altered without the authority or assent of the maker, by the insertion of additional words in blank spaces therein, the maker cannot be held to have contracted with every subsequent innocent holder who may thereby be defrauded, and is not liable to him in an action on the note in its altered form. *Greenfield Savings Bank* v. *Stowell*, 123 Mass. 196, and cases therein cited.

In *Wade* v. *Withington*, 1 Allen, 561, the defence that a note for $100 had been fraudulently altered after it had been signed, by inserting the words "and forty," was sustained against a *bona fide* indorser, although the alteration could not be detected on the most careful scrutiny.

So in *McGrath* v. *Clark*, 56 N. Y. 34, when a blank left in a note was filled with the words "with interest" after it had been signed by the maker, and indorsed by the payer, and the words were inserted without the assent of the indorser, it was held that the note was void as to the latter. Chief Justice Church, in delivering the opinion of court, said: "The rule that when one of two innocent parties must suffer by the act of a third, he who has enabled such third person to occasion the loss must sustain it, is not applicable, for the reason that the indorser did not in any legal sense enable the maker to make the alteration. He indorsed a note for a specific sum, which, as we have seen, conferred no authority upon the maker to change or alter it. If it did, indorsers would occupy a perilous position."

In the case of *Worrall* v. *Gheen*, 39 Pa. St. 388, a printed form of a promissory note had been filled up by the maker, and then indorsed for his accommodation by another, and then altered by the maker to a larger sum by taking advantage of some vacant space left in the form. Upon this case the court said: "If the same had been left entirely blank the impression would have been that the parties authorized the holder to act as their agent in filling it in, and they would have been bound accordingly. But when the sum is actually written, we can make no such inference from this fact that there is *room to write more.* This fact shows carelessness, but it was not the carelessness of the indorser but the forgery of the maker that was the proximate cause that misled the holder."

In *Holmes* v. *Trumper*, 22 Mich. 427, it was held that a promissory note which consisted of a printed blank, with the amount and time and place of payment filled in writing, and was altered, without the knowledge and consent of the maker, by adding after the printed words "with interest at," at the end of the note, the words "ten per cent.," were thereby rendered void even against an indorser who bought it in good faith. The court said: "The argument for the plaintiff amounts simply to this: that by the maker's awkwardness or negligence his note was issued by him in a shape which rendered it somewhat easier for another person to commit a crime than if he had taken the precaution to erase the word "at" and to draw a line through the blank which followed it, and that a forgery committed by filling this blank would be less likely to excite suspicion than if committed in some other way." But the court held the argument not to be sound, and declared that "whenever a party in good faith signs a complete promissory note, however awkwardly drawn, he should be equally protected from its alteration by forgery, in whatever mode it may be accomplished, unless, perhaps, when it has been committed by some one in whom he has authorized others to place confidence, as acting for him. He has quite as good a right to rest upon the presumption that it will not be criminally altered as any person has to take the paper on the presumption that it has not been."

To the same effect is the case of *Knoxville Nat. Bank* v. *Clarke*, 51 Iowa, 264, [S. C. 1 N. W. Rep. (N. S.) 491,] in which it was held that where a negotiable note for ten dollars was executed with a blank preceding the amount, and afterwards the words "one hundred and" were fraudulently inserted before the word "ten," and there was nothing in the note to excite suspicion, and it was subsequently transferred to the innocent holder, the latter could not recover on the note.

In the case of *Wood* v. *Steele*, 6 Wall. 80, the suit was upon a promissory note, which after its delivery had, without the assent of the the maker, been altered by altering the date of its maturity. The court held that the alteration extinguished the liability of the maker, and remarked: "The defendant could no more have prevented the alteration than he could have prevented a complete fabrication, and he had as little reason to anticipate the one as the other. The law regards the security, after it is altered, as an entire forgery, with respect to the parties who have not consented, and, so far as they are concerned, deals with it accordingly."

These citations show the drift of American authority on the question, and they are not opposed by any English decision.

In the case of *Young* v. *Grote*, 4 Bing. 253, S. C. 12 Moore, 484, the drawer had left with his wife checks signed by himself in blank, and the fraudulent alterations were made by his clerk, who was directed by his wife to fill out the check, and it having been found by an arbitrator that the maker had been guilty of gross negligence by causing his check to be delivered to his clerk in such a state that the latter could, and did by the mere insertion of additional words, make it appear to be his check for a larger sum, it was held by the court that he could not recover that sum from his banker, who had paid it. The ground upon which this decision rests is that the check was drawn in so negligent a way as to facilitate the forgery, and to exonerate the banker from liability to his customer from paying the amount that the latter, as it seems, gave authority to the party to fill up the check in the way it was filled up. See *Robarts* v. *Tucker*, 20 L. J. (N. S.) Q. B. 270; 16 Q. B. 560.

But this case is clearly distinguishable from the case of promissory notes above cited.

(1) The relation of the maker of a promissory note and the indorser is entirely different from that held by a customer to his banker. The contract of the banker with his customer is to honor the latter's checks, and if the negligence of the customer affords opportunity to the clerk or other person in his employ to add to the terms of a check, and thereby mislead the banker, the customer is held liable to the banker.

(2) There was no alteration of the check after it left the hands of the drawer's agents. The alteration was made by the banker's own agents, to whom he had entrusted his blank checks.

We may, then, take it as settled that when the maker of a note uses a printed blank, and fills in the amount for which he intends to become liable, leaving a vacant space to the left of the amount, in which, after the note has been put in circulation, words are fraudulently inserted, which increases the amount of the note, the liability of the maker upon the note is extinguished, and no recovery can be had therein against him.

(3) This rule should apply with greater force to bills of lading, which are not negotiable commercial paper in the sense of bills of exchange or promissory notes.

The conclusion is therefore inevitable that no suit could have been maintained by the plaintiffs, the consignees, on the bills of lading

mentioned in the complaint. If that be true, is there any ground for holding the defendant liable for its alleged negligence in filling up the bill of lading? Because, by the negligence charged, Johnson could the more easily commit the crime of forgery, is the defendant to be held civilly liable for the consequence of that crime? If a grantor leaves a blank in a deed, of which the grantee takes advantage by inserting words, which increases the amount of land which the deed purports to convey, and thereby cheats and defrauds a subsequent grantee, is the first grantor liable for the damages sustained by the last grantee? To ask the question is to answer it. No one is bound to presume that the parties with whom he deals are ready to commit crime, or is bound to take precautions to prevent it. "Is it not a rule that every one has a right to suppose that a crime will not be committed, and to act on that belief?" *Bramwell,* L. J., in *Baxendale* v. *Bennett,* note to *Knoxville Bank* v. *Clarke,* 33 Am. Rep. 137. In writing promissory notes and bills of lading and other contracts which are to pass into the hands of others, every one has a right to presume that the criminal laws of the land will protect the paper from felonious alteration, and if crime is not thus restrained he cannot be held civilly liable for the resulting damages. A failure to take all precautions to prevent the felonious alteration of a contract in writing, is not negligence. The maker of the paper has the right to presume that no such alteration will be made.

I am therefore of opinion that the leaving of a blank space in the bill of lading filled up by Johnson, does not make defendant liable for the damages resulting from Johnson's forgery.

Here is another ground on which we think the demurrer ought to be sustained. Before the making of the bills of lading there were business relations between the plaintiffs and Johnson. The complaint shows that the plaintiffs had given him a letter of credit, the plain purpose of which was to enable him to buy cotton to be consigned to the plaintiffs, and the fair presumption is that the object of the arrangement was gain to both parties.

Pursuant to their understanding Johnson buys cotton, and expecting to draw a bill on the plaintiff for the purpose of paying for it, or other cotton to be shipped to them, he delivers the cotton to defendant, and takes a bill of lading for it, by the terms of which it is to be delivered to the plaintiffs, as consignees. He thereby transfers the title of the cotton to the plaintiffs. Now, if not the agent of the plaintiffs in this transaction, he is their business associate and customer. To hold the railroad company responsible to the plaintiffs for the damages

resulting from a crime committed by their own customer in conducting the enterprise in which both were interested, because the company fail to suspect that the customer would commit a felony, and did not take precautions to prevent it, is to push the liability of a common carrier beyond that authorized by any adjudicated case, or by reason or justice. The plaintiffs trusted to Johnson to send them fair and honest bills of lading. It was they who confided in him. If he has defrauded them, they must look to him, and cannot shift the responsibility upon another party, which has been guilty of neither crime nor fraud, nor of any such negligence as can be considered the cause of their loss.

Lastly: The damage sustained by plaintiffs must be attributed to the proximate and not to the remote cause. Their loss was the direct result of the forgery committed by Johnson. Even on the theory of the plaintiffs, the negligence of the defendants preceded the forgery by Johnson and afforded the facilities for committing it. The plaintiffs cannot, therefore, charge their loss to the negligence of the defendant, which is the remote, and pass over the forgery of Johnson, which is its proximate cause. *Knoxville Nat. Bank* v. *Clarke*, 51 Iowa, 254; *Cuff* v. *Newark & N. Y. R. Co.* 35 N. J. (L. R.) 1; *Byles*, J., in *Richardson* v. *Dunn*, 8 C. B. (N. S.) 665; *Denny* v. *N. Y. Cent. R. Co.* 13 Gray, 481; *Morrison* v. *Davis*, 20 Pa. 171; *Railroad Co.* v. *Reeves*, 10 Wall. 176.

We are of opinion, therefore, that the facts stated in the complaint do not constitute a cause of action in favor of the plaintiff against the defendant. The demurrer must therefore be sustained.