# Wytheville.

## HOFFMAN v. PLANTERS NATIONAL BANK.

### JUNE 20, 1901.

### Absent, Keith, P.

1. NEGOTIABLE INSTRUMENTS—*Alteration—Incompleteness—Negotiable Instrument Act.*—The unauthorized change of the name of the payee of a negotiable note is a material alteration which renders the note void as to the maker. The fact that the note·is incomplete, when altered, does not affect the result. Sections 124 and 125 of the negotiable instrument act (Acts 1897-'8, page 910), as to alterations of such instruments, are simply declaratory of the former law on the subject.

2. NEGOTIABLE INSTRUMENTS—*Alterations—Incompleteness.*—The delivery of an incomplete negotiable note by the maker to a third person, to be negotiated, does not constitute the latter the agent of the former to make alterations (in parts of the note already complete), which are necessary to give effect to the note for the purpose for which it was intended.

3. NEGOTIABLE INSTRUMENTS—*Change of Relation of Parties—Alteration—Release.*—If, by mistake, the payee of a negotiable note signs the note as maker, whereby it becomes a complete note payable to the order of the maker, the delivery of the note to the intended maker, to be negotiated by him, does not authorize him to substitute his name as payee, and then endorse the note, and if such substituion is made, without other authority from the maker, it releases him.

Error to a judgment of the Circuit Court of the city of Richmond, rendered March 9, 1900, in a proceeding by motion for a judgment for money, wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Reversed.*

The opinion states the case.

*L. O. Wendenburg,* for the plaintiff in error.

*Smith, Moncure & Gordon* and *J. L. & C. E. Stern,* for the defendant in error.

CARDWELL, J., delivered the opinion of the court.

Some time prior to May 9, 1898, Mrs. M. F. Woodruff applied to defendant in error, The Planters National Bank of Richmond, Va., for a loan of $600.00, and the bank refused to make it without a surety or endorser on the note to be given. Thereupon Mrs. Woodruff offered to give her sister-in-law, plaintiff in error, as surety or endorser, leaving with the bank the names of certain parties in Baltimore to be inquired of as to her financial standing. After inquiring of these parties, the bank agreed to accept plaintiff in error as endorser, and thereupon, on May 9, 1898, it loaned to Mrs. Woodruff the sum of $600, less the discount thereon, and took from her a note for that amount dated May 9, 1898, payable sixty days after its date, with plaintiff in error as endorser. When this note became due, July 8, 1898, Mrs. Woodruff went to the bank and offered to pay $50.00 as a curtail of the original note, and to give a renewal note for the balance— $550. The renewal note was drawn up by one of the clerks of the bank for $550, dated July 8, 1898, and payable sixty days after its date to the order of Mrs. Nellie L. Hoffman (plaintiff in error), and the place for the maker, Mrs. Woodruff, to sign, was left blank. This blank note was given to Mrs. Woodruff, to be signed by her as drawer, and carried to plaintiff in error to be endorsed by her, the latter then being at Lakeside, about seven miles from Richmond, and the cashier of the bank agreed to wait on Mrs. Woodruff until she returned with the note endorsed by plaintiff in error. Mrs. Woodruff went to Lakeside, and told plaintiff in error to sign the note, and this she did

without reading it, but signed it in the place left blank for the drawer's signature, and did not endorse her name on it, so that, when the note left plaintiff in error's hands, and was delivered by Mrs. Woodruff to the bank that same afternoon, it was an incomplete note drawn by plaintiff in error to her own order, but not endorsed by her. When the note was delivered to the bank, in this incomplete condition, instead of sending it back to have plaintiff in error correct the mistake made in signing the note as drawer instead of as endorser, or to complete the contract evidenced by the note by endorsing her name on it, a clerk in the bank altered the note by striking out plaintiff in error's name as payee, and interlining the name of M. S. Woodruff as payee, and thereupon Mrs. Woodruff endorsed the note, and the bank accepted it in renewal, in part, of the original note, and delivered the original note to Mrs. Woodruff. When this note of $550 became due, it was not paid, and on March 13, 1899, the bank served notice on plaintiff in error of a motion to be made by it in the Circuit Court of the city of Richmond on the 1st day of April, 1899, for a judgment against her as drawer of the note for $550, with interest thereon from the 6th day of September, 1899, till paid.

Upon a trial of the cause on the general issue pleaded by plaintiff in error, it was disclosed to her, for the first time, by the introduction of the note sued on, the changes that had been made therein after it left her hands, and thereupon the court was asked to instruct the jury as follows:

" The court instructs the jury that if they believe from the evidence that the note sued on was signed by the defendant, payable to the order of herself, but was not endorsed by her, and that when Mrs. M. F. Woodruff carried the note to the bank, the plaintiff in this case, the plaintiff through one of its agents and clerks altered said note, without the knowledge or consent of the defendant, by striking out the name of the payee, the said

defendant, and interlining or inserting the name of M. S. Woodruff, as payee, and that no one had the authority to make this change or alteration, then they must find for the defendant."

This instruction was refused, and in lieu thereof the jury were told, in effect, that there was no evidence in the case to show a material alteration of the note, and therefore they should find for the plaintiff. A verdict and a judgment in favor of the bank against plaintiff in error for the amount of the note, with interest, followed.

The Circuit Court erred in refusing the instruction asked, and in instructing the jury that there was no evidence in the case to show a material alteration of the note sued on.

There was no evidence whatever tending to show that the alteration made in the note was with the knowledge or consent of the plaintiff in error, or that she in any way ratified the alteration after knowledge of it was brought home to her. That it was a material alteration and avoided the note, as to plaintiff in error, is clearly settled, we think, by statute.

Section 124 of the act to revise, arrange and consolidate into one act the laws relating to negotiable instruments, approved March 3, 1898 (Acts 1897-'8, p. 910; Pollard's Sup., 302) provides: "Where a negotiable instrument is materially altered without the assent of all parties liable therein, it is avoided except as against a party who has himself made or authorized, or assented to the alteration, and subsequent endorsers."

"But when an instrument has been materially altered, and is in the hands of a holder in due course, not a party to the alteration, he may enforce payment thereof according to its original tenor."

The first paragraph of the section applies with all its force to this case, while the last has no application to it.

Section 125 of the act defines what constitutes a material alteration of a negotiable instrument thus: "Any alteration which

changes (1) the date, (2) the sum payable either for principal or interest, (3) the time or place of payment, (4) the number or the relations of the parties, (5) the medium or currency in which it is to be paid—or which adds a place of payment where no place of payment is specified, or any other change or addition which alters the effect of the instrument in any respect, is a material alteration."

Section 184 of the act (page 917; Pollard's Sup., 309) defines a negotiable promissory note within the meaning of the act, and declares that, " Where a note is drawn to the maker's own order it is not complete until endorsed by him."

These provisions of the statute are but declaratory of the principle of universal application, that a material alteration of a written instrument renders it void as to a party who has himself not made or authorized or assented to the alteration, and applies *a fortiori* in favor of an endorser. *Dobyns* v. *Rawley*, 76 Va. 544; *Batchelder, &c.* v. *White*, 80 Va. 103; Parsons on B. & N. 561-2; Daniel on Neg. Insts., sec. 1387.

In *Robinson* v. *Berryman*, 22 Mo. App. 512, the opinion says: "Changing the note by erasing the original and inserting a different payee is a material alteration. This is so manifestly true that it needs no argument to sustain the assertion."

It is true, in the case at bar, plaintiff in error says that she signed the note and handed it back to Mrs. Woodruff "to take up the other note," but, as to the other note she was only an endorser, as the bank well knew, and does not deny. Whether plaintiff in error's signing the note as drawer, and omitting to put her name on the back thereof as endorser was accidental or not, does not appear, and is immaterial. When the note was offered at the bank that afternoon it was an incomplete instrument, its defects not being such that authority to complete the instrument was to be implied from the nature of the contract or from custom, and a clerk and agent of the bank made the alterations needed to make it a complete instrument in form

binding plaintiff in error as principal, instead of endorser or surety, and the cashier at once discounted it, and delivered the original note to Mrs. Woodruff.

When a party puts his paper in circulation, he invites the public to receive it of any one having it in possession with apparent title, and he is estopped to urge an actual defect in that which, through his act, ostensibly has none. It is the duty of the maker of a negotiable note to guard not only himself, but the public, against frauds and alterations by refusing to sign negotiable paper made on such a form as to admit of fraudulent practices upon them with ease, and without ready detection. The inspection of the paper itself furnishes the only criterion by which a stranger to whom it is offered can test its character, and when the inspection reveals nothing to arouse the suspicions of a prudent man, he will not be permitted to suffer when there has been an actual alteration. Daniel on Neg. Insts., sec. 1405.

There are many instances in which a note signed by a party and delivered to another may be materially altered, and still be binding on the party signing it in the hands of an innocent holder for value. This is upon the well settled principles already stated, but they have no application whatever in this case.

Plaintiff in error did not, by careless execution of the instrument in question, leave room for any alteration to be made, either by insertion or erasure, without defacing it, or exciting the suspicions of a prudent, careful man. Even if the cashier of the bank had no knowledge as to when and by whom the alteration in the note were made, they were of such a character that they could not have escaped his attention. He well knew that to take the note, in the state presented, in renewal of the original note upon which plaintiff in error was surety, changed her relation to the original contract from that of surety to that of principal debtor, and it behooved him to inquire by what authority from plaintiff in error this was done. No such inquiry was made, but the altered note was discounted, and plaintiff in

error had no knowledge that she had thereby been made principal debtor to the bank until Mrs. Woodruff had disposed of all of her property here and left the State.

The contention of counsel that the delivery of the incomplete note by plaintiff in error to Mrs. Woodruff constituted her the agent of plaintiff in error to make the alterations necessary to give effect to the note for the purposes for which it was intended, is without merit. If it had been the purpose of plaintiff in error to become the principal debtor to the bank, instead of endorser for Mrs. Woodruff, no reason appears why she did not endorse her name on the note. As endorser she was entitled to notice of the non-payment of the note by the principal debtor, and might have protected herself against loss. But as she was, without her knowledge or assent, put in the position of principal debtor to the bank, she was not given, and was not entitled in law to notice of the non-payment of the debt, and, having no knowledge of the failure of Mrs. Woodruff to pay it when due, an opportunity to protect herself, may have been lost to her. What more material alteration as to plaintiff in error's relation to the transactions between Mrs. Woodruff and the bank could have been made in this note than was made? The statute wisely declares that a negotiable note so altered is void, as to all parties liable therein, "except as against a party who has himself made or authorized or assented to the alteration, and subsequent endorsers."

This case does not come within the exception; nor is the position of counsel for the bank tenable that, because the note was incomplete when the alterations in it were made, the rule prescribed by the statute does not apply.

Other questions were argued by counsel, but in the view we take of the case it is unnecessary to consider them.

The judgment of the Circuit Court will be reversed and annulled, and the case remanded for a new trial in accordance with this opinion.

*Reversed.*