THE NATIONAL EXCHANGE BANK OF ALBANY, Respondent, *v.*
WILLIAM LESTER, Appellant.

Bills, notes and checks — blank spaces therein — fraudulent raising of amount of note by filling in blank space — liability of maker, or indorser, for increased amount.

Where negotiable paper has been executed with the amount blank, it is no defense against a *bona fide* holder for value for the maker to show that his authority has been exceeded in filling such blank, and a greater amount written than was intended. But if the instrument was complete without blanks at the time of its delivery, the fraudulent increase of the amount by taking advantage of a space left without such intention will constitute a material alteration. In the latter case, under section 205 of the Negotiable Instruments Law (L. 1897, ch. 612), payment thereof may be enforced according to its original tenor.

The indorser of a promissory note, the amount of which has been fraudulently raised after indorsement, by means of a forgery, is not liable upon the instrument, in the hands of a *bona fide* holder, for the increased amount, because of negligence in indorsing the same when there were spaces thereon which rendered the forgery easy, though the note was complete in form. No liability on the part of the indorser for the amount of such a note, as raised, can be predicated simply upon the fact that such spaces existed thereon.

*National Exchange Bank* v. *Lester*, 119 App. Div. 786, reversed.

(Argued January 29, 1909; decided March 5, 1909.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered May 16, 1907, affirming a judgment in favor of plaintiff entered upon a verdict and an order denying a motion for a new trial.

The defendant was sued as the accommodation indorser upon a note for $375 made by one Frank L. Fancher and acquired by the plaintiff bank before maturity in the regular course of its business.

The defense was that the note as originally made and indorsed was for $75 only; that the maker thereafter, without the knowledge or consent of the indorser, altered the note by inserting in the body thereof the words " Three hundred " immediately in front of the words " Seventy-five " and the figure " 3 " immediately in front of the figures " 75," thereby making the instrument apparently a note for $375 instead of $75; and that the maker thereafter caused the note as thus altered to be discounted by the plaintiff bank.  The answer prayed judgment that the complaint be dismissed except as to the amount of the note before alteration together with interest and protest fees, to wit, $78.66.  The defendant also served an offer to allow the plaintiff to take judgment for that amount.

Upon the trial the court charged the jury that if the note indorsed by the defendant was in fact a note for $375 on its face, the plaintiff was entitled to recover that amount and interest.

The trial judge further charged the jury that if they found that there were spaces upon the note " so carelessly and negligently left by this indorser, Mr. Lester, that a person having custody of the note might run in a figure 3 and the words ' Three Hundred ' so as not to occasion in the mind of the indorser [evidently meaning *indorsee*] any inquiry into its validity," they might find that the indorser conducted himself carelessly and negligently in the premises and thus invited the liability which the face of the note called for when presented to the bank.

The defendant duly excepted to that part of the charge to

the effect that if the defendant was negligent in leaving blank spaces, the jury must find a verdict for the plaintiff for the full amount of the note as it stood.  The court then reiterated the proposition, saying that " if the jury find that the defendant was careless and negligent in leaving vacant spaces for the words and figures, such carelessness and negligence on his part would still make him liable for the note ; "  and to this the defendant also excepted.

The jury found for the plaintiff in the sum of $375, with interest.  The judgment entered upon the verdict has been unanimously affirmed by the Appellate Division.

*W. A. Hendrickson* for appellant.  The note in suit originally called for the payment of the sum of seventy-five dollars, with interest, and it having been altered by providing for the payment of the sum of three hundred and seventy-five dollars and interest without the knowledge, assent or consent of defendant, the indorser, defendant is only liable to plaintiff for the amount of the original note. (*G. S. Bank* v. *Stowell*, 123 Mass. 196 ; *C. A. Nat. Bank* v. *Burns*, 129 Mass. 596 ; *Angle* v. *N. W. Ins. Co.*, 92 U. S. 330 ; *Holmes* v. *Trumper*, 22 Mich. 427 ; *Fay* v. *Smith*, 1 Allen, 477 ; *Wade* v. *Withington*, 1 Allen, 561 ; *Goodman* v. *Eastman*, 4 N. H. 455 ; *McGrath* v. *Clark*, 56 N. Y. 34 ; *Worrall* v. *Green*, 39 Penn. St. 388 ; *Garrard* v. *Haddan*, 67 Penn. St. 82.)

*Frederick Townsend* for respondent.  Assuming that the note was raised after appellant's indorsement, his negligence in leaving the blanks uncanceled renders him liable to a holder in due course for the amount as raised. ( *Van Duzer* v. *Howe*, 21 N. Y. 531 ; *Redlich* v. *Doll*, 54 N. Y. 234 ; *Crawford* v. *West Side Bank*, 100 N. Y. 50 ; *Critten* v. *C. Nat. Bank*, 171 N. Y. 219 ; *Timbel* v. *G. Nat. Bank*, 121 App. Div. 870 ; *Chapman* v. *Rose*, 56 N. Y. 137 ; *Venton* v. *Robinson*, 4 Hun, 252 ; *Nat. E. Bank* v. *Veneman*, 43 Hun, 241 ; *Hutkoff* v. *Moje*, 20 Misc. Rep. 632 ; *Kramer* v. *H., etc., Co.*, 133 App. Div. 315 ; *Page* v. *Krekey*, 137 N. Y. 307.)

WILLARD BARTLETT, J.   As this case went to the jury, they might well have found that the note in suit was a note for only seventy-five dollars when originally prepared by the maker and indorsed at his instance by the defendant, and that it had subsequently been altered to a note for three hundred and seventy-five dollars when discounted by the plaintiff bank. They were instructed in substance, however, that the indorser was liable for the amount of the note as raised by the alteration, if he had been careless and negligent in placing his name upon the instrument while there were spaces thereon which permitted the insertion of the words and figure whereby it was transmuted from a note for seventy-five dollars into a note for three hundred and seventy-five dollars. Conceding that the contract which he actually signed bound him only to pay the smaller amount, the jury were permitted to find that in consequence of his negligence in the respect indicated it had become a contract which bound him to pay the larger amount to a subsequent innocent holder of the paper.

In support of the correctness of this ruling, the learned counsel for the respondent asserts the doctrine that "a party to a note who puts his name to it in any capacity of liability, when it contains blanks uncanceled facilitating an alteration raising the amount, is liable for the face of the note as raised to an innocent holder for value;" and he declares that this doctrine has been approved and apparently adopted in Alabama, California, Colorado, Illinois, Kansas, Kentucky, Louisiana, Michigan, Missouri, Nebraska and Pennsylvania.

In considering his proposition, it is important to bear in mind a radical distinction which exists between two classes of notes to which the adjudicated cases relate: (1) Those notes in which obvious blanks are left at the time when they are made or indorsed, of such a character as manifestly to indicate that the instruments are incomplete until such blanks shall be filled up; and (2) those notes which are apparently complete, and which can be regarded as containing blanks only because the written matter does not so fully occupy the entire paper as to preclude the insertion of additional words

or figures or both. It is a note of the latter class that we have to deal with here. One who signs or indorses a note of the first class has been held liable to *bona fide* holders thereof, in some of the cases cited by the respondent, according to the terms of the note after the blanks have been filled, on the doctrine of *implied authority*, while in other cases, relating to notes of the second class, the liability of the maker or indorser for the amount of the note as increased by filling up the unoccupied spaces therein, is placed upon the doctrine of *negligence* or *estoppel by negligence*.

The cases cited by respondent in which parties to commercial paper executed by them while obvious blanks remained unfilled thereon have been held liable upon the instrument as completed by filling out such blanks, on the ground of implied authority, require no further consideration here, as there is no suggestion that there was any blank of this character upon the note in suit. These cases are *Winter & Loeb* v. *Pool* (104 Ala. 580); *Statton* v. *Stone* (61 Pac. Rep. 481, Colorado); *Cason* v. *Grant Co. Deposit Bank* (97 Ky. 487), and *Weidman* v. *Symes* (120 Mich. 657). There were obvious blanks also in the notes under consideration in *Visher* v. *Webster* (8 Cal. 109) and *Lowden* v. *S. C. Nat. Bank* (38 Kan. 533), and the decision in each of these cases appears to have proceeded upon the doctrine of implied authority rather than negligence.

It must frankly be conceded, however, that the respondent finds support for the doctrine which it asserts in the case at bar in the decisions of Pennsylvania, Illinois and Missouri, so far as the maker of commercial paper is concerned, and in those of Kentucky and Louisiana, in respect to the liability of a party who has indorsed or become surety upon a note in which there were spaces (not obvious blanks) that permitted fraudulent insertions enlarging the amount. (*Garrard* v. *Haddan*, 67 Pa. St. 82; *Yocum* v. *Smith*, 63 Ill. 321; *Scotland Co. Nat. Bank* v. *O'Connel*, 23 Mo. App. 165; *Hackett* v. *First Nat. Bank of Louisville*, 114 Ky. 193; *Isnard* v. *Torres & Marquez*, 10 La. Ann. 103.)

In *Garrard* v. *Haddan* (*supra*) a space was left between the words " one hundred " and the word " dollars " in which " fifty " had been inserted after the maker had signed and delivered it; and the court held the maker answerable to a *bona fide* holder for the full face of the note as altered on the ground of the negligence of the maker in leaving the space in the note which was thus filled up after execution. " We think this rule is necessary," said Chief Justice THOMPSON, " to facilitate the circulation of commercial paper and at the same time increase the care of drawers and acceptors of such paper, and also of bankers, brokers and others in taking it." It is a little difficult to see how the rule tends to make *bona fide* purchasers more careful, as this last observation suggests.

The case of *Yocum* v. *Smith* (*supra*) held the maker liable upon a note which had been raised after execution from one hundred dollars to one hundred and twenty dollars, the words " and twenty " having been inserted in a space left between the word " hundred" and the word " dollars." The court said that the maker had acted with unpardonable negligence in signing the note and leaving a blank which could so easily be filled; that he had thus placed it in the power of another to do an injury and that he must, therefore, suffer the resulting loss. This decision undoubtedly sustains the position of the respondent, although there was another element of negligence in that case which is not present here. It appeared that the maker there was informed by letter by the purchaser, very soon after the date of the note, that he had bought it and of its date and amount; yet he made no objection as to the amount until nearly a year later.

In *Scotland Co. Nat. Bank* v. *O' Connel* (*supra*) the defendants executed and delivered a note for $100 to one Smith, the body of which was in his handwriting, in a condition which enabled him to add the words " thirty-five " after " one hundred " in the written part and put the figures " $135 " at the head of the note in the space where the amount is usually indicated by figures. The St. Louis Court of Appeals

held that the defendants were liable for $135 because they had delivered the note to Smith, who was their co-maker, "in such a condition as to enable him to fill blank spaces without in any manner changing the appearance of the note as a genuine instrument."

The cases thus far discussed were all of them actions against the makers of the raised paper. The same rule, however, was applied against an indorser in *Isnard* v. *Torres & Marquez* (*supra*) by the Supreme Court of Louisiana under the following circumstances: Marquez indorsed a note for $150 for the accommodation of Torres. The amount was raised to $1,150 and purchased by the plaintiff in good faith as a note for that sum. The report states that there was testimony of experienced persons to the effect that if at the time of the indorsement the word *onze* (for *eleven*, the note being in French) and the additional figure before 150 were not there "the note would have exhibited blanks which at least with regard to the written part were unusual and calculated to attract attention and would have rendered the note unsalable in the market." In this opinion, upon inspection of the note, the court expressed its full concurrence. The indorser was held liable for the amount of the note as raised on the ground that he had not exercised proper caution. To the same effect is *Hackett* v. *First Nat. Bank of Louisville* (*supra*), where it was held that a surety who had signed a note in which were written the words "five hundred" with spaces before and after them, which the maker had filled up by writing "twenty" before and "fifty" after them, thereby making a note for $2,550, was liable thereon to a purchaser in good faith. In this case the attention of the Kentucky Court of Appeals was called to the fact that the great weight of authority was the other way, but in view of the fact that the rule had been so established in Kentucky for a quarter of a century the court determined to adhere to it, in observance of the principle of *stare decisis*.

This court is not thus constrained. The question involved in the present appeal has not been authoritatively decided in

this state and we are at liberty to adopt that view of the law which seems to us most consonant with sound reason and best supported by well-considered adjudications in other jurisdictions.

The outcome of these adjudications is accurately set forth, as it seems to me, by Mr. Randolph in his treatise on the Law of Commercial Paper as follows :

" Where negotiable paper has been executed with the amount blank, it is no defense against a *bona fide* holder for value for the maker to show that his authority has been exceeded in filling such blank, and a greater amount written than was intended.   This was also once held to be the rule where no blank had been actually left, but the maker had negligently left a space either before or after the written amount which made it easier for a holder fraudulently to enlarge the sum first written.   It has now, however, become in America an established rule that if the instrument was complete without blanks at the time of its delivery, the fraudulent increase of the amount by taking advantage of a space left without such intention   *   *   *   will constitute a material alteration and operate to discharge the maker."   (1 Randolph on Commercial Paper, § 187.)

The rule thus stated is sustained by the decisions of the courts of last resort in Massachusetts, Michigan, New Hampshire, Iowa, Maryland, Mississippi, Arkansas and South Dakota.   In my judgment it rests on a sounder basis than the opposite doctrine and accords better with such adjudications of this court as bear more or less directly on the question involved.

The leading case sustaining this view is *Greenfield Savings Bank* v. *Stowell* (123 Mass. 196) in which the opinion was written by Chief Justice GRAY, afterward an Associate Justice of the Supreme Court of the United States.   The discussion is careful and exhaustive, reviewing all the important cases in England and America bearing upon the subject which had been decided up to that time (1877), including that of the Supreme Court of Pennsylvania in *Garrard* v. *Had*

*dan* (*supra*) which was the principal authority the other way. I shall not undertake to review the same authorities here or paraphrase the opinion of Chief Justice GRAY which deals with them in such a manner as fully to justify his rejection of the doctrine that the makers of a promissory note apparently complete when they sign it are liable for an amount to which it may subsequently be raised, without their knowledge or consent, on the ground that they were negligent in permitting spaces to remain thereon in which the figures and words which effected the increase could be inserted. In support of his conclusion, however, he quotes some passages from the opinion of CHRISTANCY, J., in *Holmes* v. *Trumper* (22 Mich. 427) which will bear repetition as suggestive of some of the reasons why the forgery of a promissory note should not be held to create a contract, which the party sought to be charged never consciously made himself or authorized anybody else to make in his behalf. Speaking of the alleged negligence in leaving spaces on the note, Mr. Justice CHRISTANCY said : " The negligence, if such it can be called, is of the same kind as might be claimed if any man, in signing a contract, were to place his name far enough below the instrument to permit another line to be written above his name in apparent harmony with the rest of the instrument ; \* \* \* Whenever a party in good faith signs a complete promissory note, however awkwardly drawn, he should, we think, be equally protected from its alteration by forgery in whatever mode it may be accomplished ; and unless, perhaps, when it has been committed by some one in whom he has authorized others to place confidence as acting for him, he has quite as good a right to rest upon the presumption that it will not be criminally altered, as any person has to take the paper on the presumption that it has not been ; and the parties taking such paper must be considered as taking it upon their own risk, so far as the question of forgery is concerned, and as trusting to the character and credit of those from whom they receive it, and of the intermediate holders."

While a general reference to the cases cited and reviewed

by Chief Justice G<small>RAY</small> in *Greenfield Savings Bank* v. *Stowell* (*supra*) will suffice, there are some later decisions to which attention may be called.     In *Knoxville Nat. Bank* v. *Clark* (51 Iowa, 264) will be found a strong and well-reasoned opinion against holding a party to a note which has been fraudulently raised, after it left his hands, liable for negligence, because when he executed the instrument there were spaces left thereon (not being obvious blanks designed to be filled) which would permit of forgery.     The trial court had rendered judgment against the maker for the amount of the note as raised from $10 to $110 on a finding of negligence in leaving a space before the word "ten" and the figures "10."     "On this ground," said the Supreme Court of Iowa, "the court proceeded and the decision is based on the reasoning of the civil lawyers.     But could it be anticipated that such negligence would cause another to commit a crime, and can it be said a person is negligent who does not anticipate and provide against the thousand ways through or by which crime is committed?     Is it not requiring of the ordinary business man more diligence than can be maintained on principle, or is practicable, if he is required to protect and guard his business transactions so that he cannot be held liable for the criminal acts of another.     If so, why should not the negligence of the owner of goods which are stolen excuse the *bona fide* purchaser?"     And referring to the argument that such a measure of liability is required to promote the free interchange of commercial paper (a view which seems to have been influential in the Pennsylvania case of *Garrard* v. *Haddan*) the court well said : "At the present day negotiable paper is not ordinarily freely received from unknown persons.     Forgeries, however, are not confined to such.     But the necessities of trade and commerce do not require the law to be so construed as to compel a person to perform a contract he never made and which it is proposed to fasten on him because some one has committed a forgery or other crime."

In *Burrows* v. *Klunk* (70 Md. 451) the Maryland Court of Appeals emphasizes the distinction between a note in blank

as to the amount, when signed and delivered to another for use, and a note complete on its face when signed and delivered, in which has been written the sum payable, the date, time of payment and name of the payee. " In such case," it is held " there can be no inference that the defendant authorized any one to increase the amount, simply because blank spaces were left in which there was room enough to insert a larger sum."

No one questions the proposition that where a party to commercial paper intrusts it to another with a blank thereon designed to be filled up with the amount such party is liable to a *bona fide* holder of the instrument for the amount filled in, though it be larger than was stipulated with the person to whom immediate delivery was made. (*Van Duzer* v. *Howe*, 21 N. Y. 531.) So, also, a note executed with a blank therein for a statement of the place of payment is not avoided in the hands of a *bona fide* holder for value by the insertion in the blank of a place different from that agreed upon by the original parties. (*Redlich* v. *Doll*, 54 N. Y. 234.) But where there is no blank for that purpose when the note is indorsed, the insertion of an obligation to pay interest is a material alteration which invalidates the instrument as against the indorser. (*McGrath* v. *Clark*, 56 N. Y. 34.) In the case last cited the note when indorsed ended with the word "at," followed by a space in which the maker, after indorsement, inserted a place of payment, adding the words "with interest;" but no suggestion appears to have been made that because the space left was large enough to allow the insertion of these words, the indorser was negligent and could be charged with the amount of the note, including the interest, on that ground. On the contrary, as the law then stood, he was relieved of all liability whatever as the effect of the unauthorized alteration. Now, however, under the Negotiable Instruments Law (§ 205) he would be liable on the paper according to its original tenor.

To sustain the judgment in the case at bar in view of the instructions under which the issues were submitted to the

jury, we must hold that the indorser of a promissory note, the amount of which has been fraudulently raised after indorsement, by means of a forgery, is liable upon the instrument in the hands of a *bona fide* holder, for the increased amount, because of negligence in indorsing the same when there were spaces thereon which rendered the forgery easy, though the note was complete in form. To do this would be to create a contract through the agency of negligence; for the action is not in tort for damages, but upon the contract as expressed in the note. But apart from any question as to the form in which the indorser is sought to be charged, I am of opinion that no liability on the part of the indorser for the amount of such a note as raised can be predicated simply upon the fact that such spaces existed thereon. This conclusion I base upon the authorities to that effect which I have already discussed and upon what seem to me to be considerations of sound reason independent of judicial authority. An averment of negligence necessarily imports the existence of a duty. What duty to subsequent holders of a promissory note is imposed by the law upon a person who is requested to indorse the paper for the accommodation of the maker and who complies with such request? It is a complete instrument in all respects — as to date, name of payee, time and place of payment and amount. There are, it is true, spaces on the face of the instrument in which it is possible to insert words and figures which will enlarge the amount and still leave the note apparently a genuine instrument — in other words, there is room for forgery. On what theory is the indorser negligent because he places his name on the paper without first seeing to it that these spaces are so occupied by cross lines or otherwise as to render forgery less feasible? It can only be on the theory that he is bound to assume that those to whom he delivers the paper or into whose hands it may come will be likely to commit a crime if it is comparatively easy to do so. I deny that there is any such presumption in the law. It would be a stigma and reflection upon the character of the mercantile community and constitute an intolerable reproach

of which they might well complain as without justification in practical experience or the conduct of business. That there are miscreants who will forge commercial paper by raising the amount originally stated in the instrument is too true and is evidenced by the cases in the law reports to which we have had occasion to refer; but that such misconduct is the rule, or is so general as to justify the presumption that it is to be expected and that business men must govern themselves accordingly, has never yet been asserted in this state and I am not willing to sanction any such proposition either directly or by implication. On the contrary, the presumption is that men will do right rather than wrong. (See *Bradish* v. *Bliss*, 35 Vt. 326.) As was said by Judge CULLEN in *Critten* v. *Chemical Nat. Bank* (171 N. Y. 219, 224), it is not the law that the drawer of a check is bound so to prepare it that nobody else can successfully tamper with it. Neither is it the law that the indorser of a promissory note complete on its face may be made liable for the consequences of a forgery thereof simply because there were spaces thereon which rendered the forgery easier than would otherwise have been the case.

I think the judgment of the Appellate Division should be reversed and a new trial granted, with costs to abide the event.

CULLEN, Ch. J., GRAY, HAIGHT, WERNER, HISCOCK and CHASE, JJ., concur.

Judgment reversed, etc.