## SAVINGS BANK OF RICHMOND v. NATIONAL BANK OF GOLDSBORO.

(Circuit Court of Appeals, Fourth Circuit.
January 13, 1925.)

No. 2295.

**1. Bills and notes ⟨⟩378—Bank held not liable on draft raised by forgery.**

Under the Uniform Negotiable Instruments Act, N. C. § 124, as to liability on a negotiable instrument which is materially altered, a bank issuing a draft which is a complete instrument, though on plain unsensitized white paper and without protective devices against alteration, is not liable for the amount to which the draft has been raised by a forged alteration, though it is held by another bank which acquired it for value in due course.

**2. Courts ⟨⟩366(14)—Federal courts follow construction of state statutes by its highest court.**

The interpretation placed by a state's highest court upon its own statutes will be accepted and followed by the federal courts, though questions of commercial law and general jurisprudence may be involved or incidentally arise, and especially where the statute is one enacted in the interest of uniformity in commercial law, as a Uniform Negotiable Instruments Act.

In Error to the District Court of the United States for the Eastern District of North Carolina, at Raleigh; Henry G. Connor, Judge.

Action at law by the Savings Bank of Richmond against the National Bank of Goldsboro. Judgment for defendant, and plaintiff brings error. Affirmed.

J. Crawford Biggs, of Raleigh, N. C., and A. W. Patterson, of Richmond, Va., for plaintiff in error.

Robert N. Simms, of Raleigh, N. C., for defendant in error.

Before WOODS, WADDILL, and ROSE, Circuit Judges.

WADDILL, Circuit Judge. This is a suit at law, brought in the United States District Court for the Eastern District of North Carolina, by the plaintiff in error, against the defendant in error, hereinafter referred to as plaintiff and defendant, to recover the sum of $8,470.50, on account of a certain draft drawn by A. C. Norwood, president of the defendant bank at Goldsboro, N. C., on the First National Bank of New York, dated originally March 29, 1918, for the sum of $6, payable to the order of N. L. Massie, which draft was afterwards unlawfully, and without defendant's knowledge or consent, fraudulently forged and altered in certain material respects, viz., by changing the date thereof from March 29,

1918, to June 21, 1918, and the amount thereof from $6 to $8,470.50. The draft as altered was, in due course of business, and for value on the 25th of June, 1918, cashed by the plaintiff bank, the latter in all respects acting in good faith, and without discovering the forgery.

The facts in the case are briefly these: In the month of December, 1917, Massie was introduced by J. B. Egerton, his uncle, a prominent citizen of Goldsboro, to Norwood, president of the bank, and from that time until June 1918, Massie did business with the bank. After such introduction, which was the first time Massie was known to the president of the bank, the defendant issued to Massie drafts on New York for small amounts, whenever requested by him, he giving in exchange therefor his own checks or cash to cover the same. In such transactions, ten in number, Massie had his dealings entirely with Norwood, president of the bank, and not with the bank's officers who usually attended to such matters. The drafts were drawn on the New York bank by Norwood, president of the Goldsboro bank, in his own handwriting, and entered by him on the books of the bank. This custom of drawing small drafts, in exchange for checks or cash, seems to have been had only with Massie, who explained that such paper could be more conveniently used by him in settlement for purchases from correspondents; and the draft in suit, No. 11,-681, was one of that number, issued by the president of the bank after business hours of March 29, 1918, and the same was filled out in the president's handwriting with pen and ink, making the same a complete draft for $6, and delivered to Massie. The draft thus issued was on plain white paper, not sensitized, and without the use of a protectograph, or other safety device, to prevent alteration of the paper, and without stenciling the amount on the draft.

On the 25th of June, 1918, the draft in question, dated June 21, 1918, calling for the sum of $8,470.50, the amount being in figures and written at large across the draft and stenciled by shredding or protectograph device, thus giving to the eye every appearance of genuineness, was presented to the plaintiff bank by Massie, who had been dealing with it for about two years, stood well in Richmond as a man of moral and financial strength, and did nothing to cause any suspicion on plaintiff's part in handling the paper. The draft was accordingly purchased, plaintiff giving him in exchange therefor its cashier's check for

$8,470.50, drawn on the First National Bank of Richmond, where it was promptly paid to the drawee Massie. The New York draft, No. 11,681, was at once put in course of collection, passing first through the First National Bank of Richmond, then the National Bank of Commerce of New York, and finally the drawee, the First National Bank of New York, where it was paid on June 26, 1918. Shortly thereafter, plaintiff was notified of the forgery in connection with the New York draft, and took steps to protect itself in the premises. The banks through which the draft had passed made demand one of the other for the amount thereof, and each declined to pay the same, and suit was instituted by the First National Bank of New York against the National Bank of Commerce for the amount thereof. That bank promptly brought in the First National Bank of Richmond and the plaintiff bank as defendants, with the result that judgment was entered in favor of the plaintiff against the National Bank of Commerce, and this judgment the plaintiff bank promptly paid.

Immediately after receiving payment of plaintiff's draft on the First National Bank of Richmond, on the 25th of June, 1918, Massie disappeared, and it quickly developed that he had been forging the drafts given him by the defendant, and palming them off on certain Richmond banks. The defendant bank, on receiving information of the raising of the draft aforesaid, repudiated the transaction, refused to pay the same and to ratify the changes therein, and gave notice that the alleged draft was spurious and that it would not pay the amount called for therein. This necessitated the institution of this suit to recover the judgment aforesaid paid by plaintiff.

[1] Plaintiff insists that defendant is liable, regardless of its innocence in the matter of the forgery and the fraud practiced, because the defendant had so carelessly and negligently drawn the draft in question as not only to make possible, but to invite, the very trouble that has arisen and fallen on innocent parties by its conduct.

There seems to be but little dispute as to the facts of the case, and the legal question is upon whom the loss sustained shall fall, caused by the forgery and alteration of the draft after it had been issued and passed for value in due course of business. Defendant insists that with a completed draft such as the one in suit, losses arising from its subsequent alteration and forgery do not fall upon it, but rather upon those who have chosen to accept the same as changed. Defendant, moreover, invokes in defense to the action the Negotiable Instruments Law of North Carolina (section 3106, Code) bearing upon altered instruments. This section reads as follows:

"Where a negotiable instrument is materially altered without the assent of all parties liable thereon, it is avoided except as against the party who has himself made, authorized or assented to the alteration, and subsequent endorsers. But when an instrument has been materially altered and is in the hands of a holder in due course not a party to the alteration he may enforce payment thereof according to the original tenor."

The precise issue presented by the pleadings is that the fact that the defendant issued a draft on New York to Massie, on nonsensitized paper, and without the impression thereon of any safety device, under the circumstances stated, constitutes such negligence as makes the defendant liable in this action to the plaintiff for the loss arising therefrom.

It cannot be said that the question presented is free from difficulty, or that the authorities are in accord. On the contrary, there is the greatest contrariety of view in the adjudicated cases as to upon whom the liability should fall. That a very high degree of care should be exercised by the drawer of a negotiable instrument to see that it is safeguarded from every reasonable chance of alteration is manifest; and when issued under circumstances such as here, and loss follows by reason of the alteration and forging thereof, as between the drawer and the innocent holder for value, assuming liability exists thereon, there is much force in the contention that the latter should not be called upon to bear the loss, unless there be some neglect or default shown in accepting and paying the draft. High authority, while perhaps not the latest, and the greater number of adjudicated cases will be found to fully sustain this view. In fact, counsel for the plaintiff do not deny the general proposition that the maker of a negotiable instrument, drawn with all of the care which usually obtains among prudent people of the class issuing such paper, would be unaffected by the subsequent alteration of the instrument so issued. They insist, however, that a different rule prevails where, as here, carelessness in drawing the instrument made readily possible the alteration of the same.

"When the drawer of the bill or the mak-

er of the note has himself, by careless execution of the instrument, left room for any alteration to be made, either by insertion or erasure, without defacing it, or exciting the suspicion of a careful man, he will be liable upon it to any bona fide holder without notice when the opportunity which he has afforded has been embraced, and the instrument filled up with a larger amount or different terms than those which it bore at the time he signed it." 2 Daniel on Negotiable Instruments, § 1405.

"If a bill or note is so carelessly or negligently drawn or blank spaces left, permitting material alteration, without defacing the instrument or changing its appearance so as to excite the suspicion of a person of ordinary business capacity, the alteration or filling up of such blanks is no defense to it in the hands of an innocent purchaser." 8 Cyc. p. 30. See, also, 2 Michie on Banks and Banking, p. 1195; Tiedeman on Commercial Paper, § 396; Yocum v. Smith, 63 Ill. 321, 14 Am. Rep. 120; Humphrey v. Herrick, 72 Neb. 878, 101 N. W. 1016, 102 N. W. 1010; Garrard v. Haddon, 67 Pa. 82, 5 Am. Rep. 412; Diamond v. Gott, 137 Ky. 585, 126 S. W. 131, 31 L. R. A. (N. S.) 643; Zimmerman v. Rote, 75 Pa. 188; Hoffman v. Bank, 99 Va. 485, 39 S. E. 134.

The contrary view of the question as to whom the loss should be visited upon, where there is an innocent holder of a negotiable draft who, in good faith, cashed the same, will be shown from the following, among other, citations: Critten v. Chemical Nat. Bank, 171 N. Y. 224, 63 N. E. 969, 57 L. R. A. 529; Savings Bank v. Stowell, 123 Mass. 196, 25 Am. Rep. 67; Holmes v. Trumper, 22 Mich. 427, 7 Am. Rep. 661; Bank v. Wangerin, 65 Kan. 423, 70 P. 330, 59 L. R. A. 717; Burrows v. Klunk, 70 Md. 451, 17 A. 378, 3 L. R. A. 576, 14 Am. St. Rep. 371; Bank v. Lester, 194 N. Y. 461, 87 N. E. 779, 21 L. R. A. (N. S.) 402, 16 Ann. Cas. 770; 1 Randolph on Commercial Paper, § 187; 1 R. C. L. p. 1034, §§ 69, 70; Merchants' Nat. Bank v. Baltimore, etc., 102 Md. 583, 586, 63 A. 108; Wood v. Steel, 6 Wall. 80, 83, 18 L. Ed. 725; R. C. Co. v. Reeves, 10 Wall. 176, 191, 19 L. Ed. 909; Angel v. Insurance Co., 92 U. S. 330, 341, 23 L. Ed. 556.

In Bank v. Wangerin, supra, 65 Kan. 423, 70 P. 330, 59 L. R. A. 717, the court said:

"Where a negotiable instrument is delivered to a payee, complete in all of its parts, the maker thereof is not liable thereon, even to an innocent holder, after the same has been fraudulently altered so as to express a larger amount than was written therein at the time of its execution."

Second, "such maker is not bound, at his peril, to guard against the commission of forgery by one into whose hands such instrument may come."

1 Randolph on Commercial Paper, § 187, says:

" * * * It has now, however, become the established rule that, if the instrument was complete without blanks at the time of its delivery, the fraudulent increase of the amount by taking advantage of a space left without such intention, although it may be negligently, will constitute a material alteration, and operate to discharge the maker."

The theory upon which the negligent maker of the instrument, the drawer of the draft in this case, is relieved from liability, is that its negligence was not the proximate cause producing or bringing about the loss; but that the same arose from a supervening cause, viz., the forging and altering of the draft in question. Wharton on Negligence, 138; Railroad v. Kellogg, 94 U. S. 469, 475, 24 L. Ed. 256; Harton v. Telephone Co., 146 N. C. 429, 59 S. E. 1022, 14 L. R. A. (N. S.) 956; Exchange Nat. Bank v. Little Rock Bank, 58 F. 140, 7 C. C. A. 111, 22 L. R. A. 686; Lehman v. R. R. (C. C.) 12 F. 595, 600, 16 Ann. Cas. 776, note.

We have perhaps said more on the general subject of the effect of forging and altering a negotiable instrument complete in itself when issued, and upon whom loss arising therefrom should fall, than is necessary, especially as from our view of the present case, the same is confined within a comparatively narrow compass. This case is governed by the laws of the state of North Carolina, the draft sued on having been issued and negotiated there, and the state Uniform Negotiable Instruments act had been passed, and was at the time of the transaction, and is now, in full force and effect. Acts General Assembly of North Carolina 1899, chap. 733, § 124, hereinbefore recited; Consolidated Stat. North Carolina, § 3106.

This section of the act is plain and unambiguous, and by its express terms prescribes upon whom loss shall fall in a transaction like the present, and that, in the circumstances here, the liability against the drawer of the draft as forged exists only for the original amount thereof. The language of the statute and its obvious purpose and intent are too manifest to leave

room for cavil or doubt as to its meaning, and we should so take it, if left alone to our judgment thereof. But we are called upon to consider and pass upon its meaning and effect in the light of the interpretation placed thereon by the supreme court of North Carolina, in a case in all respects like the present, and arising upon one of the issue of small drafts made by the defendant bank shortly after the one in this case, in favor of the same payee as here. Broad Street Nat. Bank of Richmond v. National Bank of Goldsboro, 183 N. C. 463, 112 S. E. 11, 22 A. L. R. 1124, note 1140, 1145. That court, in an elaborate and able opinion written by Justice Hoke, now Chief Justice, with whom the other members of the court with the exception of Chief Justice Clark, since deceased, concurred, passed upon and construed the section of the act in question to be that (a) under it (referring to section 124), in circumstances as here, recovery could only be had against the Goldsboro Bank, the defendant therein, for the original face value of the draft; (b) that where a negotiable note was delivered in completed form, the possibility that it might be raised or altered by the willful fraud or forgery of another was too remote to afford the basis of an action either in tort or in contract; (c) that suit as upon a contract could not be maintained upon the note in its forged and altered state, because it was not the contract of the maker of the instrument; and (d) that, in such case, the issuing of the note could in no sense be considered the proximate cause of the loss—the court, at page 473, saying:

"On these facts, if there were no authoritative decisions or statutory regulation in denial of plaintiff's right to recover, the acceptance of its position would be attended with such inconvenience and would introduce such uncertainties in this branch of the law merchant that it would be necessary to establish some rule protecting a defendant from liability. These negotiable instruments are among the most important features of our business life. There is no well-grounded distinction in principle which imputes liability to a bank in a case of this sort from that which would equally affect an individual. And it would well-nigh withdraw these instruments from ordinary use if any and every one who issued them without these precautionary devices would incur the risk of liability insisted on by plaintiff in this case."

The court cited in support of its conclusion an array of authority, including the cases herein referred to, taking the same view, and this decision we should follow.

[2] Plaintiff's counsel insist that this court is not bound by or required to follow the North Carolina decision respecting the liability sought to be enforced here, and on the contrary, that the general commercial law, under which it is claimed the right of recovery exists, should prevail. Undoubtedly, in matters of general commercial law, federal courts exercise largely their independent judgment, and are not bound or controlled by local decisions. But this doctrine is greatly circumscribed where the meaning placed upon a state statute is involved. In such cases, the views and interpretations placed by the state's highest court upon its own statutes, passed within the inhibitions of the federal Constitution, will be accepted and followed, although questions of commercial law and jurisprudence may be involved or incidentally arise; and in a case like the present, where the statute under review is a section of the Uniform Negotiable Instruments Act enacted in the interest of uniformity of commercial law and decisions, and now in force in well-nigh all the states of the Union, a federal court should be slow to attempt to maintain and enforce its own ideas and understanding of such law against the plain provisions thereof as construed by the highest court of the state. Burgess v. Seligman, 107 U. S. 20, 33, 34, 2 S. Ct. 10, 27 L. Ed. 359; Minnesota Iron Co. v. Kline, 199 U. S. 593, 26 S. Ct. 159, 50 L. Ed. 322; 11 Cyc. 750b, note 97, and cases cited; 15 C. J. 927, note 58.

This view of the law is conclusive of the denial of the right of the plaintiff to recover, and is binding upon us, and hence the decision of the District Court must be affirmed, with costs.

Affirmed.