CASE 72.—ACTION BY THE DIAMOND DISTILLERIES COMPANY AGAINST S. B. GOTT.—March 11, 1910.

## Diamond Distilleries Co. v. Gott

Appeal from McCracken Circuit Court.

W .M. REED, Judge.

Judgment for defendant, plaintiff appeals.— Affirmed.

1. Alteration of Instruments—Negotiable Instruments Law— Effect.—Negotiable Instruments Law (Laws 1904,. c. 102) sections 124, 125, declaring the effect of material alterations, and defining what shall constitute such alterations, is merely declaratory of the law merchant.

2. Alteration of Instruments—Filling Blanks—Place of Payment of Note.—Where the maker of a note signed it, leaving a blank after the promise to pay between the words "at" and "value received," the payee or any subsequent holder was authorized to fill the blank by writing in the name of a bank or other place of payment, either within or without the state and his act in so doing did not constitute an alteration of the note.

3. Alterations of Instruments—Note—Laches.—The maker of a note may by his own laches make it possible for another to so alter it as to wholly change its terms and meaning, and yet compel him to pay it to an innocent holder.

4. Bills and Notes—Transfer—Payment to Original Payee.— Where plaintiff at the time defendant's note was transferred to it had notice of defendant's arrangement to pay the note to the payee by installments, and it was agreed that payments should be collected by the payee and remitted to plaintiff, payment of the note by defendant to the payee discharged his obligation to plaintiff.

J. C. FLOURNOY for appellant.

HENDRICK & CORBETT for appellee.

OPINION OF THE COURT BY JUDGE SETTLE —Affirming.

The appellee, S. B. Gott, of Paducah, Ky., was sued in the court below by the appellant, Diamond Distilleries Company, of Cincinnati, Ohio, upon the following note:

"$4,000.00.                    PADUCAH, KY., Feby. 19, 1907.

"Four months *after date I promise to pay to the order of* Thompson, Wilson & Co. four thousand & 00-100 *dollars* at Office Diamond  Distilleries  Co., Cincinnati, O., *value received.*  Due June 19.

"S. B. GOTT."

The note was indorsed and delivered by Thompson, Wilson & Co., of Paducah, to the appellant as collateral security for the payment of a much larger sum due it from that company.  When executed by appellee and delivered to Thompson, Wilson & Co., the note was in words and figures as follows:

"$4,000.00.                    PADUCAH, KY., Feby. 19, 1907.

"Four months *after date I promise to pay to the order of* Thompson, Wilson & Co. four thousand & 00-100 *dollars at* ................................... ..............*value received.*  Due...............

"S. B. GOTT."

It will be observed that, when signed by appellee and delivered to Thompson, Wilson & Co., there was a blank space of considerable length between the words "at" and "value."  This blank was after the delivery of the note by appellee to Rinkliff, agent and business manager of Thompson, Wilson & Co.,

before or at the time of its indorsement and delivery
to Anderson, agent of the Diamond Distilleries Com-
pany, filled by Rinkliff who wrote therein between
"at" and "value" the words "office Diamond Dis-
tilleries Co., of Cincinnati, O."

It was shown by the testimony of appellee, and ad-
mitted by Rinkliff, that appellee was not present
when the place of payment was inserted in the note
by Rinkliff; that he was not advised thereof, or asked
to consent thereto, and, in fact, did not know of it
until after the assignment of the note to appellant
and after its maturity. According to Rinkliff's testi-
mony, appellant's office at Cincinnati was added to
the note as the place of payment, because he (Rink-
liff) did not wish it to be made payable at any of
the Paducah banks. Anderson denied that he was
present when Rinkliff inserted in the note the place
of payment, or that he heard from Rinkliff any sug-
gestion "that he did not wish it payable at a
Paducah bank," and testified that when he received
the note it was in every particular as it now ap-
pears. It is therefore patent from the evidence that
the words "office Diamond Distilleries Co., Cincin-
nati, O.," were inserted in the blank line or space
above appellee's signature to the note, after he had
signed and delivered it to the agent of Thompson,
Wilson & Co., and without his knowledge or consent.
Without mentioning all the grounds of defense con-
tained in the several paragraphs of appellee's an-
swer, it is sufficient to say that, as amended, it denied
his liability upon the note and alleged its payment
by him to Thompson, Wilson & Co., without knowl-
edge on his part that it had been assigned and de-
livered by that company to appellant; and, in ad-
dition, charged the alteration of the note without his

knowledge or assent by the insertion therein of the appellant's Cincinnati office as the place of payment; that the alteration was a material one; and that by reason thereof he had been released from liability upon the note. The affirmative matter of the answer, as amended, was controverted by reply. The trial resulted in a verdict and judgment in appellee's favor, and appellant, being dissatisfied therewith and at the refusal of the circuit court to grant it a new trial, has appealed.

It is insisted for appellant that appellee by executing and delivering the note with a blank line or space, indicating that it was to be filled by writing therein the place of payment, gave to the payee or any holder of the note authority to fill such blank with a place of payment. Section 125, art. 8, Negotiable Instruments Statute (Laws 1904, c. 102), declares what changes or additions to a note will constitute a material alteration: "Any alteration which changes (1) the date, (2) the sum payable, either for principal or interest, (3) the time or place of payment, (4) the number of the relations of the parties, (5) the medium of currency in which payment is to be made, or which adds a place of payment, where no place of payment is specified, or any other change or addition which alters the effect of the instrument in any respect, is a material alteration." Section 124 of article 8 declares the effect of a material alteration: "Where a negotiable instrument is materially altered without the assent of all parties liable thereon, it is avoided, except as against a party who has himself made, authorized or assented to the alteration, and subsequent indorsers. But when an instrument has been materially altered and is in the hands of a holder in due

course, not a party to the alteration, he may enforce payment thereof, according to its original tenor." Another important provision of the statute in question is found in section 14 of article 1, viz: "Where the instrument is wanting in any particular, the person in possession thereof has prima facie authority to complete it by filling up the blanks therein. * * *

The foregoing provisions of the statute are but restatements of the law with respect to negotiable instruments, as it has long been recognized by the courts of this state. Manifestly a note executed and delivered by the maker in the form originally presented by the one under consideration is not upon its face a completed instrument. When one executes and puts in the hands of another a note provided with a blank line or space, apparently intended to be filled with the name of a bank, or other place of payment, any holder in due course of the note has prima facie authority to fill such blank; and especially would such authority be implied where the blank line or space immediately follows a word which unmistakably indicates that it is to be filled with the place of payment. The word "at" in the note executed by appellee with the blank or space following it was well calculated to produce in the mind of any holder of the note a reasonable belief that the filling of the blank with a place of payment was necessary to complete the instrument, and that he was authorized, if not invited, to fill it. Indeed, if the blank therein was not such a one as the framers of the statute, supra, contemplated should be filled by the "person in possession thereof," it would be difficult to conceive of a blank that would justify the prima facie right to fill it conferred by the statute.

Unless the alleged arrangement by which appellee claims he was to pay the note and his defense of payment interposed a bar to appellant's right to recover thereon, which we will presently consider, we should be bound to hold that appellee's leaving of the blank in the note for inserting the place of payment conferred upon Rinkliff, the agent of Thompson, Wilson & Co., authority to fill it, and that the same implied authority would have given Anderson, as agent of appellant, the right to fill the blank with the place of payment after the assignment of the note to his principal. Ample authority on this subject may be found in the decisions of this court; a case in point being that of Cason v. Grant County Deposit Bank, 97 Ky. 487, 31 S. W. 40, 17 Ky. Law Rep. 344, 53 Am. St. Rep. 418. The bank sued Cason upon a note of $200, executed by the latter to Siddons, and which Siddons, before its maturity, sold and indorsed to the bank. When executed by Cason, the note read as follows:

"Dolls $200.        WILLIAMSTOWN, Oct. 2, 1889.

"Three months after date I promise to pay to the order of G. W. Siddons two hundred dollars........ at.................................value received. Due ......................

                                "CHAPMAN CASON."

After signing and delivering the note to Siddons, the blanks were filled by inserting the word "payable" before the word "at" and words "Bank of Williamstown, Ky.," after the word "at," thereby making the note "payable at the Bank of Williamstown, Ky." After the filling of the blanks therein as indicated, the note was indorsed to and discounted by the Grant County Deposit Bank. Cason

by answer resisted its payment upon the grounds that
he had been released from liability upon the note,
because of the filling of the blanks therein, as in-
dicated, by Siddons or some one else after its execu-
tion by him and without his knowledge or consent,
and that such filling of the blanks was fraudulently
done and was wholly unauthorized by him.   The
bank by reply traversed the averments of the an-
swer, and, in substance, alleged that the filling of
the blanks in the note was authorized by Cason; that
it discounted the paper in good faith and for a valu-
able consideration at the request of Siddons before
its maturity, and without notice of  any  infirmity
therein.   Judgment went against Cason in the circuit
court, and was later affirmed on appeal.   In discuss-
ing in the opinion the legal effect of the filling of
blanks in a note as was done in that executed by
Cason, the court, Judge Pryor writing, said: ''Where
one signs a paper in blank, or partly in blank, when
so written when signed and delivered as to  show
upon its face that a blank is left to fill up  as  to
amount, or where payable, there is an implied au-
thority to the holder to fill up the blanks in accord-
ance with the general character of the instrument,
and, when this is done by the payee, it is not such
an alteration as will invalidate the paper as to one
who takes it for value without notice.   *   *   *''

Mr. Daniel, in his work on Negotiable Instruments,
says:  ''*   *   *   Where after the word 'at' a blank
was left and it was filled and made payable at an un-
authorized place, it was held that the word 'at' im-
plied that the blank space succeeding it might be
filled before the note should be  delivered  with a
designated place of payment.''   2  Daniel,  Nego.
Instr. sections 1405, 1406.   In Kitchin, etc., v. Place,

41 Barb. (N. Y.) 466, the maker of a promissory note was sued. He denied liability upon the ground that the note had been materially altered after its execution without his knowledge or consent by the filling of a blank space after the word "at" with words designating a place of payment. It was held that the holder of the note had implied authority to thus fill the blank. In Redlich v. Doll, 54 N. Y. 234, 13 Am. Rep. 573, the note as executed contained a blank space following the word "at." The note was delivered by the maker to the payee with the agreement that the note should not be negotiated, but the latter in violation of the agreement filled the blank with a place of payment and negotiated the paper. The court held the maker liable to a bona fide holder for value.

We do not think the fact that the place of payment inserted is fixed in another state would make any difference in the relations of the parties to the note. It may be true that the maker of a note would not contemplate that the place of payment would be fixed in another state, but by leaving a blank for the addition of the place of payment and thereby authorizing the holder of the note to insert it the authority conferred to fill the blank would be broad enough to give him as great a right to make the note payable in some other state, as in this. We do not think the case of Mitchell v. Reid's Ex'r, etc., 106 S. W. 833, 32 Ky. Law Rep. 683, sustains the view of the law presented by appellee's learned counsel. It is true that in that case the holder of the note by an addition made it payable in another state than the one in which the note was executed, and that this court held that the maker thereof was by the alteration released from liability on the note,

but the alteration in that case was made by striking from the note with a pen the name of the bank in Tennessee, at which it was made payable by the maker, and inserting in lieu thereof as the place of payment the name of a bank in the state of Mississippi. The change was made, too, after the maker had signed and delivered the note and without his knowledge or consent. Manifestly the holder of the note was in such case unauthorized to change the place of payment, and, as it was done in such a way as to mutilate the instrument, it was apparent that the alteration could have been, and was, known to any subsequent holder of the note. Obviously this court could but hold that the alteration made the note void; and, while the court did say in the opinion that the alteration "subjected the paper to the laws of the state of Mississippi when the persons making the note payable in the state of Tennessee may be presumed to have contracted with reference to the laws of that state," it was in substance admitted that the legal effect would have been the same, if the alteration had made the note payable at some other bank in the state of Tennessee. We may also add that the maker of a note may by his own laches make it possible for another to so alter it as to wholly change the terms and meaning, and yet compel him to pay it to an innocent holder. The estoppel arising from such negligence was applied by this court in the case of Blakey v. Johnson, 13 Bush, 197, 26 Am. Rep. 254, to a surety who had signed a note for his principal, negligently leaving a space above the signature of the principal, in which the alteration was written; and, notwithstanding the rule that a surety can only be bound by the very terms of his contract, he was held liable on the note to the payee,

who was without knowledge of the alteration, because, but for his negligence in leaving the unnecessary blank space, the alteration could not have been successfully made.

In discussing the doctrine under which the surety was thus held liable, the court, by Judge Cofer, quoting with approval from Daniel on Negotiable Instruments, section 1405, said: "There is a general principle which pervades the universal law merchant respecting alterations, a principle necessary to the protection of the innocent and prudent from the negligence and fraud of others. That is, when the drawer of the bill or maker of the note, has himself by careless execution of the instrument left room for any alteration to be made, either by insertion or erasure, without defacing it or exciting the suspicion of a careful man, he will be liable upon it to any bona fide holder without notice when the opportunity which he has afforded has been embraced and the instrument filled up with a larger amount, or different terms than those which it bore when he signed it. The true principle applicable to such cases is that the party who puts his paper in circulation invites the public to receive it of any one having it in possession with apparent title, and he is estopped to urge an actual defect in that which, through his act, ostensibly has none. The inspection of the paper itself furnishes the only criterion by which a stranger to whom it is offered can test its character, and, when that inspection reveals nothing to arouse the suspicions of a prudent man, he will not be permitted to suffer when there has been actual alteration." Garrard v. Hadden, 67 Pa. 83, 5 Am. Rep. 412; Visher v. Webster, 8 Cal. 109; Rainbolt v. Eddy, 34 Iowa, 440, 11 Am. Rep. 152; Harvey v. Smith, 55 Ill. 224.

In our opinion appellee was not released from liability upon the note on account of the insertion therein of appellant's Cincinnati office as the place at which it was to be paid, but because of the arrangement he made with Thompson, Wilson & Co. for paying the note, which was communicated to appellant's agent, Anderson, when the note was assigned to appellant; and also because he paid the note under the arrangement referred to. In other words, both appellee and Rinkliff, Thompson, Wilson & Co.'s agent, testified, in substance, that, when appellee executed the note, it was with the understanding between them that appellee would make weekly payments thereon to Thompson, Wilson & Co. until the note was fully discharged. Rinkliff testified that when he for Thompson, Wilson & Co. assigned and delivered the note to appellant's agent, Anderson, he informed him of the arrangement by which appellee was to pay the note. Both appellee and Rinkliff also testified that appellee complied with this agreement by paying the whole of the note in installments on or before its maturity, which payments were all made to Thompson, Wilson & Co., and were by that company, according to Rinkliff's testimony, sent or paid to appellant at Cincinnati.

It is conceded that possession of the note passed to appellant by its assignment, which, of course, carried with it the right to appellant to transfer it to its Cincinnati office. And, though appellant acquired the note with the understanding that it was to be paid Thompson, Wilson & Co. by appellee, the latter were to pay the money received of appellee to appellant at its Cincinnati office, which as between the assignor and assignee made that the ultimate place of payment; and for this reason appellant's office

in that city was inserted in the blank space in the note as the place of payment. The insertion in the note of the place of payment did not invalidate the note, impose any additional risk or burden upon appellee, or release him from liability. He was, however, discharged as stated by his payment of the note to appellant through Thompson, Wilson & Co. Anderson, appellant's agent, did not deny that the arrangement by which appellee's note was to be paid was communicated to him by Rinkliff when he received the note from the latter, nor did he deny that appellee paid the note as agreed, or that such payments were not sent or paid appellant by Thompson, Wilson & Co. as received. It is true that Donnelly, appellant's bookkeeper, testified that the note had not been paid, but this testimony only contradicted Rinkliff's statement that the money paid by appellee to Thompson, Wilson & Co. in satisfaction of his note was, in turn, paid appellant by them, and did not in any sense disprove the payment of the note by appellee to Thompson, Wilson & Co., as testified by appellee and Rinkliff without contradiction. Anderson having accepted for appellant the assignment of the note with the understanding that it would be paid to Thompson, Wilson & Co. by appellee, and that Thompson, Wilson & Co. would pay appellant at its Cincinnati office the money received from appellee, by that arrangement made Thompson, Wilson & Co. its agent to receive from appellee what it paid on the note, and, if Thompson, Wilson & Co. failed to pay appellant what they received of appellee in satisfaction of the note, the loss cannot fall on appellee, but must be borne by appellant.

The above undisputed facts demonstrate that appellant took the note with notice of the arrangement

by which it was to be paid, and that appellee, though
ignorant of the assignment of the note, paid it to
appellant, the assignee, through Thompson, Wilson
& Co., in view of which it would be manifestly un-
just to compel him to pay it again. We are aware
that the trial court, after properly admitting the
testimony as to the payment by appellee of the note
under the arrangement referred to, following the
introduction of all the evidence erroneously excluded
it from the consideration of the jury, and submitted
the case to them under a single instruction upon,
what we think, was an improper issue, viz., whether
the place of payment was inserted in the note with-
out appellee's consent and with the knowledge and ap-
proval of appellant, yet as it is patent that the verdict
of the jury was correct, and such as the admitted
facts in respect to the payment by appellee of the
note would have authorized the court to peremptorily
instruct them to find, justice requires that it be un-
disturbed.

Wherefore the judgemnt is affirmed.

Nunn, J. (dissenting). This action was insti-
tuted by appellant to recover of appellee the sum of
$4,000 with interest, as evidenced by a promissory
note. The note in its form when this suit was in-
stituted was as follows:

"$4,000.00.          PADUCAH, Ky., Feby. 19, 1907.

"Four months after date I promise to pay to the
order of Thompson, Wilson & Co. four thousand dol-
lars at office of Diamond Distilleries Company, Cin-
cinnati, Ohio, value received.      S. B. GOTT."

It was executed on a blank, printed form which
was as follows:

"$............ Paducah, Ky.,...............1907.

"................after date...........promise
to pay to the order of ........................
.......... dollars at ........................
value received. Due .............."

When appellee signed and executed the note it was
as follows:

"4000.00.         Paducah, Ky., Feby. 19, 1907.

"Four months after date I promise to pay to the
order of Thompson, Wilson & Co. four thousand dol-
lars at ........................................
........., value received.        S. B. Gott."

Thus it will be seen that all the blank spaces in
the printed form were filled when the note was
executed, except the last one which follows the word
"at."

Appellee alleged that the note had been materially
altered without his knowledge or consent after he
signed and delivered it to the payee, by adding, im-
mediately after the printed word "at," these words:
"office of Diamond Distilleries Company, Cincinnati,
Ohio." This alteration was shown by the evidence
without any contradiction to have been made with-
out the knowledge or consent of appellee and with
the knowledge and consent of appellant's managing
agent in the absence of appellee. It was further
shown without contradiction that appellee, in accord-
ance with an agreement with the payee of the note,
Thompson, Wilson & Co., made weekly payments to
them on the note from its date until he had paid the
claim before its maturity, and of this agreement ap-
pellant's managing agent was apprised at the time
he took the note from Thompson, Wilson & Co. as
collateral.

The lower court gave only one instruction to the jury, which is as follows: ''You will find for the plaintiff $4,000, the amount of the note sued on, with interest thereon from July 20, 1907, unless you shall believe from the evidence in this case that the words 'office Diamond Distilleries Company, Cincinnati, O.,' were inserted in said note without the consent of defendant, and with the knowledge and consent or approval of the plaintiff or its agent, and, if you shall so believe from the evidence in this case, then you will find for the defendant.'' Appellant asked only one instruction, and it was refused, which is as follows: ''The jury will find for the plaintiff unless they believe from the evidence that the plaintiff, or its authorized agent, directed or made the alteration complained of by inserting the words 'office Diamond Distilleries Company, Cincinnati, Ohio.' '' It will be observed that both instructions mean in substance the same. The court's instruction used the words ''and with the knowledge and consent or approval of the plaintiff or its agent,'' while the one offered used these words, ''that the plaintiff or its authorized agent directed or made the alteration complained of,'' etc. There is no difference in the language of the two instructions in so far as the legal aspect of the case is concerned. It was immaterial whether plaintiff or its agent made, directed, consented to, or approved the alteration. The one expression or the other had the same legal effect as applied to the issue involved. The questions were: Was the alteration material? This was conceded. Was appellant present, or did he authorize or consent to the change? This was negatived by the testimony, and was without contradiction. This left the only question to be determined: Did the appellant or its agent either

direct or make the alteration, or was it or its agent present when the alteration was made, and consented to and approved it? If it or its agent was present and did either one of these things, the effect upon its right to recover is the same.

Appellant concedes that the alteration of the note was material, but contends that appellee cannot avail himself of it as a defense, for the reason that he executed the note with a blank space, and that the holder had the implied authority to fill it with the words used, and cites many decisions of this and other states showing that, when one signs a paper in blank and delivers it to another, the person who thus signs and delivers such a paper makes the one to whom it is delivered his agent with implied authority to fill the blank. This is conceded to be the law, but that question is not involved on this appeal. The note was not signed in blank nor delivered to one as agent with either expressed or implied power to do anything whatever to complete the transaction. In the case at bar a complete instrument—a plain note of hand—was signed and delivered to a creditor, evidencing the amount of his debt and the date of its payment. As executed by the appellee, the note showed that it was made in Paducah, that it was a Kentucky contract, and was to be governed by the laws of this state. The date of the note, the amount, when to be paid, and the name of the payee were all given. In fact, there was nothing to be added to make it a complete and binding contract. The note as executed is evidence of the fact that it was to be paid in the city of Paducah, where the parties to it then and had long resided; and there was nothing in the face of it to indicate to any reasonable mind that appellee, the maker, had constituted the payee,

either expressly or impliedly, his agent to add anything to it to complete the transaction. On the contrary, the blank space rather indicated the contrary to any person who understood the transaction and situation of the parties to it. Certainly there was nothing that would indicate to a reasonable mind that appellee had authorized the payee to change the place of payment from Paducah to another state or foreign country. If the alteration of the note had been made by the payee without the knowledge or approval of appellant or its agent, the rights of the parties would have been different. In addition to the face of the note showing that it was to be paid in Paducah, appellant's agent was informed at the time that there was an agreement between the payor and payee that it was to be discharged by the date of its maturity by weekly payments by the maker to the payee.

We quote from the testimony of John G. Rinkliff, a stockholder and manager of Thompson, Wilson & Co., which shows that appellant's managing agent was informed of this fact. He testified as follows: "Q. At the time that the words, 'office of the Diamond Distilleries Company, Cincinnati, Ohio,' were put on that note, where was you? A. I forget whether I was at the Palmer House or at our office one or two of the places. I was with Mr. Anderson, the representative of the Diamond Distilleries Company, at the time. Q. And you were with Mr. Anderson? A. Yes; and we discussed the matter. I told him Mr. Gott owed us this money, and that he could have that as a collateral, and Mr. Gott would be paying off the indebtedness, and I would be taking up his paper as he would pay me. I says: "The best way to do is to put it in here, payable at the office

of the Diamond Distilleries Company, at Cincinnati, so as not to have the paper thrown down here on these banks.' * * * A. As I said awhile ago, we owed the Diamond Distilleries Company $12,000 or $13,000 when that arrangement was made, and when we went into bankruptcy we only owed them $6,000, and made the agreement with Anderson we was to pay— (Objected to by plaintiff.) Q. Made an agreement you was to pay how? A. So much every week, and Mr. Gott was to pay me every week some money, and I told Mr. Anderson he would be paying me on that right straight along and I would be taking up his paper.''

We cannot understand upon what principle appellant should be permitted to make appellee pay this note the second time; when it was present when the alteration was made and approved it, and the note on its face shows that it was a complete and binding obligation; that it needed no additional words to make it complete, and the blank space, under the circumstances, was sufficient to put appellant's agent on inquiry, and he would have learned just what he was told; that is, that it was the understanding and agreement between the payor and payee that the note was to be paid in Paducah by weekly payments, which was complied with by appellee to the latter without any knowledge on his part of the assignment of the note to appellant. It would not be right to allow appellant to recover on this note when it knew these facts, especially when it is evident from the testimony that it kept silent with reference to the assignment and received appellee's money which was paid to it through Thompson, Wilson & Co. as per the agreement testified to by Rinkliff, and their debt by this and other means was reduced from $13,000 to $6,000.

We have not been able to find any statute or opinion by any court authorizing a recovery under such state of facts. Appellant's counsel cite the case of Cason v. Grant County Deposit Bank, 97 Ky. 487, 31 S. W. 40, 17 Ky. Law Rep. 344, 53 Am. St. Rep. 418, as a case in point which authorizes appellant to recover in the case at bar. That case is unlike the case before us. In that case the note was executed by Cason to one Siddons, who filled the blank spaces and assigned the note to the bank for value. The bank had no knowledge or information as to any private agreement between Cason and Siddons as to the place of payment, nor did it know when the alteration was made, and therefore did not approve it with the knowledge that the change had been made. The following quotations from that opinion will show that it cannot apply to the case at bar, to wit: "Where one signs a paper in blank or partly in blank when so written when signed and delivered as to show upon its face that a blank is left to fill up as to amount, or where payable, there is an implied authority to the holder to fill up the blank in accordance with the general character of the instrument, and, when this is done by the payee, it is not such an alteration as will invalidate the paper as to one who takes it for value without notice of its infirmity." In the same opinion the court quotes with approval from Mr. Daniel's work on Negotiable Instruments, as follows: " 'That when the drawer of a bill or the maker of a note has himself by careless execution of the instrument left room for any alteration to be made, either by insertion or erasure, without defacing it, or exciting the suspicions of a careful man, he will be liable upon it to any bona fide holder without notice, when the opportunity which he has afforded has been embraced.' "

In the case at bar appellant had full knowledge of the manner, time, and place of payment, as understood by the parties to the paper when it took the note as collateral, and appellee is entitled to make the same defenses against it in the hands of appellant, as he would be entitled to make if it were in the hands of the original payee.

For these reasons, I dissent from the opinion, but concur in the affirmance.