JOHN DONELSON et al. v. C. Y. GOFF et al.

Middle Section. March 26, 1926.

No petition for Certiorari was filed.

1. **Evidence. Allowing pro confesso to be taken is not an admission of false representation.**
    Where parties told the holder of a note that they were to be released from the note and thereby caused him to mutilate the note by scratching their names therefrom, and when later sued on the note, permitted a pro confesso to be taken against them, held not to be an admission that they had made false representation.

2. **Bills and notes. Motive which causes alteration of an instrument is immaterial.**
    The intent or motive with which an alteration in an instrument was made is immaterial, so far at least as the effect upon the instrument itself and upon the rights evidenced by it is concerned. A material alteration of an instrument by a party thereto will vitiate it as to parties not consenting thereto, though made with no fraudulent intent whatever and with an entirely honest motive.

3. **Bills and notes. Negotiable instrument materially altered is voidable as to all except consenting parties.**
    Where a negotiable instrument is materially altered without the assent of all parties liable thereon, it is avoided, except as against a party who has himself made, authorized, or assented to the alteration, and subsequent indorsers.

4. **Bills and notes. Evidence. Evidence held to show material alteration of the note.**
    Where the holder of a note upon being advised by certain signers of the note that they were to "come off" of the note and another party was to be added, struck the names of the parties from the note by drawing a pencil line through them and added the other name, and later learning that this was not true attempted to restore it to its original condition by erasing the lines

T. A. Vol. II—26.

and scratching out the added name, held that there was a material altera-
tion of the note and the parties not consenting were not liable thereon.

Appeal from Chancery Court, White County; Hon. W. R. Officer,
Chancellor.

Reversed and dismissed.

Story and Goff, of Sparta, for appellant.

C. P. Hutchinson, and H. B. Frater, of Sparta, for appellees.

DeWITT, J. In this cause defendants, A. E. Haston, E. E. Goff
and A. J. Donelson, obtained a writ of error to review so much of
a decree as awards a recovery against them of $1,743.73 upon a prom-
issory note signed by them and also by C. Y. Goff, J. D. Donelson,
W. W. Davis, and W. H. Wilson. The decree awards recovery
against all of them, but these four last-named parties made no re-
sistance and pro confesso was taken as to them.

These appellants answered averring that by reason' of certain
material alterations made in said note without their knowledge
or consent they were released from all liability thereon.

The Chancellor found, and it is undisputed, that the note sued on,
being for $1500 and interest and dated September 11, 1922, was a
joint and several obligation, having been originally drawn in favor
of the complainant, John Donelson, by Jeff Donelson, C. Y. Goff, E.
E. Goff, A. E. Haston, A. J. Donelson and W. W. Davis; that W.
H. Wilson later signed the note; that, although it did not so appear
on the face of the note, Jeff Donelson and C. Y. Goff were principal
makers; and E. E. Goff and A. E. Haston were in fact sureties for
C. Y. Goff and A. J. Donelson and W. W. Davis were sureties for
Jeff Donelson; that John Donelson transferred an interest in said
note to his co-complainant, J. N. Franklin, and delivered the note
to him to secure an indebtedness of about $1,200, and John Donelson
retained the remaining interest in said note when collected.

The Chancellor further found that complainant, John Donelson,
told defendant, Jeff Donelson, that he had no objection to Jeff Donel-
son and W. W. Davis "coming off the note;" that upon representa-
tion of Jeff Donelson and W. W. Davis that they were to "come off
the note," complainant, Franklin, relying upon their representation,
attempted to cancel their names from the note, by drawing a pencil
line through their names; that upon learning of the falsity of said
representations of Jeff Donelson and Davis, said Franklin restored
the note to its original form, and it was in the original form when
the cause was heard; that the name of W. H. Wilson was added at
the same time as the attempted cancellation, and upon the same rep-
resentations of the same parties; that upon learning of the falsity of
the representations, complainant Franklin cancelled said signature
by running a pencil line through it; that the restoration of said note

was made upon the advice of complainants' counsel after the suit was instituted but before the note was filed in this cause. He further found that said cancellations were made by Franklin by innocent mistake, induced by Jeff Donelson and Davis, and made without the knowledge or consent of Haston, E. E. Goff or A. J. Donelson; that Jeff Donelson and Davis, by allowing a pro confesso to be taken against them, have admitted the falsity of their representations; that there was no material alteration of the instrument sued on, but an attempted cancellation of the signatures; that the note having been mutilated by mistake, complainants had a right to restore it to its original form; that the restoration is complete and adequate, and is sufficient to support a judgment.

As to the facts, it is insisted that the Chancellor erred in finding that Jeff Donelson represented to Franklin that he and Davis "were to come off the note;" and that the representation really was that "it would be all right for Jeff Donelson and Davis to come off the note." Now John Donelson testified that he told Jeff Donelson that it would be all right with him for Jeff Donelson and Davis to "come off the note," but that he did not intend to suggest mutilating the note. Franklin testified that Jeff Donelson came to him and told him that John Donelson said that it would be all right for Jeff Donelson and Davis to "come off the note." This is all the evidence upon this question of fact. It is affirmatively shown and not disputed that these changes made in the note by Franklin, as well as the addition of the signature of Wilson, were made without the consent or even the knowledge of the appellants, E. E. Goff, Haston and A. J. Donelson.

The representation made by Jeff Donelson to Franklin was in the same language as was used by John Donelson to him—that it would be all right with him for Jeff Donelson and Davis to "come off the note." This does not support the finding that Jeff Donelson and Davis represented to Franklin that they were to "come off the note." But it is clear that acting upon the representation of Jeff Donelson, Franklin drew a pencil line through the signatures of Jeff Donelson and Davis, and that the signature of W. H. Wilson was added to the note.

It is further insisted that the Chancellor erred in finding that Franklin undertook to restore the note to its original form upon learning "of the falsity of the representation" made by Jeff Donelson to Franklin. As above shown, there is no evidence to support such finding of false representation. Nor does the record contain any evidence that the attempted restoration was made by another upon the advice of complainants' counsel, but it does show that he made it himself by trying to erase the marks from the names of

Jeff Donelson and Davis and by running a pencil line through the name of W. H. Wilson.

When the bill was filed in this cause the note sued on contained the pencil lines run through the names of Jeff Donelson and Davis and the signature of Wilson was upon the note unimpaired. The complainants in the bill sought no reformation of the instrument and made no averment whatever concerning these changes made from its original form. Pro confesso was taken as to Jeff Donelson and Davis after the answers of appellants were filed setting up the changes made in the note, but there is no evidence that said Donelson and Davis knew of these averments. The effect of the order pro confesso was an admission by them of liability on the note, either because they had not been legally released or they did not desire to plead any release. As no charge was made in the bill that they had made false representations, or even made any representations whatever, it can hardly be concluded that the order pro confesso operated as an admission that they had made false representations. On the other hand, it may be that they believed that a mistake had been committed by them and that they should not seek to take advantage of the understanding with the holders of the note.

In connection with John Donelson's testimony that he did not intend to authorize any alteration of the note, it is inferable that he did not intend to release any of the other parties from liability; nor would it seem that Franklin intended to effect such release. It is to be inferred that the intention was to release Jeff Donelson and Davis in consideration of the signature of Wilson. But the question is whether or not the legal effect of Franklin's acts was to release the parties having no knowledge of them and therefore, not consenting thereto. This question is raised by appropriate assignments of error.

The intent or motive with which an alteration in an instrument was made is immaterial, so far at least as the effect upon the instrument itself and upon the rights evidenced by it is concerned. A material alteration of an instrument by a party thereto will vitiate it as to parties not consenting thereto, though made with no fraudulent intent whatever and with an entirely honest motive. 1 R. C. L., p. 997 and cases cited; Michie's Digest, Vol. 1, p. 318 and cases there cited; 2 Daniel on Negotiable Instruments (6 Ed.), p. 1551. This rule is contained in the Negotiable Instruments Law, Shannon's Ann. Code, sec. 3516 A, 132:—"Where a negotiable instrument is materially altered without the assent of all parties liable thereon, it is avoided, except as against a party who has himself made, authorized, or assented to the alteration, and subsequent indorsers."

Section 3516a133 provides that any alteration which changed the number or the relations of the parties, or any other change or addition which alters the effect of the instrument in any respect, is a material alteration.

These provisions of the Negotiable Instruments Law are merely declaratory of the law merchant. Diamond Distilleries Co. v. Gott, 137 Ky., 585, 126 S. W. 131; 31 L. R. A. (N. S.), 643.

Section 3516a131, Shannon's Ann. Code, provides that a cancellation made unintentionally, or under a mistake, or without the authority of the holder is inoperative; but where an instrument or any signature thereon appears to have been canceled, the burden of proof lies on the party who alleges that the cancellation was made unintentionally, or under a mistake, or without authority.

We are of the opinion that the attempted cancellation of the signatures of Jeff Donelson and Davis was not made unintentionally or under mistake, so that the same would not be inoperative. There were no misrepresentations made to Franklin, and he acted upon the same information as that possessed by Jeff Donelson and the payees of the note. His mistake was one of law, not of fact. The elimination of one of the principal makers and one accommodation maker, and the addition of a signature would operate to change the number and the relations of the parties. It would alter the effect of the instrument. It would weaken the recourse of the accommodation makers against the principals and affect the right of the accommodation makers as to the contribution for which each is liable to the others. It is the universal rule that the erasure of names of makers or sureties without the consent of the others is a material alteration. Daniel on Negotiable Instruments (6 Ed.), p. 1570; Bank v. Halsted, 42 Ind. App., 79, 84 N. E., 1008; 3 R. C. L., p. 1116; 1 R. C. L., pp. 974, 996; Hall's Admx v. McHenry, 19 Ia., 521, 87 Am. Dec., 451.

In McVey v. Ely, 5 Lea, 438, it was held that an alteration of notes so as to make them bear interest from date, by the principal maker, at the request of the payee, without authority or consent of the surety, discharged the surety, although the principal was innocent of intentional wrongdoing and acted under a mistake of fact.

This is, therefore, a case of material alteration. These appellants are not bound by the old contract, for that has been altered; neither are they bound by the new contract, for they are not parties to it. Bethune v. Dozier, 10 Ga., 235. The policy of the law is to insure the identity of the instrument and prevent the substitution of another without the privity of the party concerned. Crockett v. Thomason, 5 Sneed, 344.

It is true that the parties whom Franklin undertook to release have not sought any advantage therefrom; and that an attempt

was made to restore the note to its original form. But the rule is that even this will not avoid the effect of a material alteration. In Crockett v. Thomason, 5 Sneed, 342, it was held that where a note executed by two or more obligors is altered in a material part—as by shortening the time of maturity by one year—by one of said obligors by the procurement of the payee or his agent, and without the consent of the other obligors, it is no longer binding upon the latter, either in the form to which it is changed, or in its original form; that such alteration imports a fraud in law, whether so intended or not, and even if no injury is done, and the change is abandoned by the party, in whose favor it was intended to operate, the consequence, upon strong grounds of policy and settled rules of law is the same. In Deering Harvester Co. v. White, 2 Cates, 132, it was held that the validity of an instrument rendered void by material alteration cannot be restored by erasing the alteration and making it conform to its original terms. To the same effect is the holding in McDaniel v. Whitsett, 96 Tenn., 12. It is there said: "The rule is intended to operate as a penalty upon the holder, as well as a protection to the maker. It imports a fraud when it is material, whether so intended or not, and even if no injury is done and the change abandoned by the party in whose favor it was intended to operate, the consequence, upon strong grounds of public policy and settled rules of law, is the same—that is, to avoid the notes."

For these reasons the decree of the Chancellor in so far as it holds these appellants liable on the note in question and awards any recovery against them thereon, or for costs, is reversed and the suit is dismissed as to them. The costs of this appeal are adjudged against the appellees.

Faw, P. J., and Crownover, J., concur.